UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUISIANA STATE** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 14-931** |
| **KYRON HUNTER** | **SECTION: "G"(5)** |

### ORDER

In this litigation, the Defendant in the proceedings below and the removing party here, Kyron J. Hunter, also known as Khara Amun Bey ("Hunter"),[1] has removed to this Court proceedings against him by Jefferson Parish related to six traffic offenses and one misdemeanor weapons offense, all of which have apparently resulted in the imposition of contempt penalties against him.[2] Pending before the Court is a "Motion to Dismiss for Untimely Removal, Lack of Subject Matter Jurisdiction, and Lack of Statement of Grounds for Removal"[3] filed by the State of Louisiana and a "Motion for Writ of Mandamus"[4] filed by Hunter. Having considered the record, the memoranda in support, the memorandum in opposition, and the applicable law, the Court will remand the matter to state court and dismiss his pending motion.

---

[1] In his "Notice of Removal," Hunter identifies himself as "Khara Amun Bey, in propria persona Indigenous Moorish American National, erroneously referred to as artificial entity 'KYRON J. HUNTER.'" Rec. Doc. 1 at p. 1.

[2] In response to the entry of the Clerk of Court's directive that the removing party file, among other things, copies of all pleadings filed by the parties in state court, Hunter filed documents appearing to relate to these seven cases in the Second Parish Court, Parish of Jefferson. *See* Rec. Doc. 6.

[3] Rec. Doc. 9.

[4] Rec. Doc. 13.

**I. Background**

*A.     Factual Background*

In his removal filings, Hunter includes records and communication that appear to originate from the Second Parish Court in the Parish of Jefferson.[5] According to these documents, Hunter has been cited on seven different occasions for violations of traffic and weapons statutes, and has been found in contempt in proceedings related to each citation. Specifically, the documents state that:

(1)     In Case Number S1062094, Hunter was cited on August 21, 2007 for "NO DRIVERS LICENSE," "SPEEDING," "EXPIRED LICENSE PLATE," and "EXPIRED BRAKE TAG," leading to a warrant of attachment, contempt fees, two missed arraignments for contempt, and a balance of $450.00 due as of February 19, 2014;

(2)     In Case Number S1079794, Hunter was cited on March 8, 2008 for "DRIVING VEH WITH SUSPENDED LIC," "EXPIRED BRAKE TAG," "EXPIRED LICENSE PLATE," "NO PROOF OF INSURANCE ON VEH," leading to a warrant of attachment, contempt fees, two missed arraignments for contempt, and a balance of $450.00 due as of February 19, 2014;

(3)     In Case Number S1242400, Hunter was cited on May 7, 2013 for "EXPIRED LICENSE PLATE," "EXPIRED / NO BRAKE TAG," "NO PROOF OF INSURANCE ON VEHICLE," "DRIVING VEH WITH SUSPENDED LIC," leading to a warrant of attachment, contempt fees, one missed arraignment for contempt, and a balance of $150.00 due on February 19, 2014;

(4)     In Case Number S1097257, Hunter was cited on August 17, 2008 for "FAIL TO MAINTN CONTROL / C.O.M.V.," "DRIVING VEH WITH SUSPENDED LIC.," "NO PROOF OF INSURANCE ON VEH," leading to a warrant of attachment, contempt fees, two missed arraignments for contempt, and a balance of $450.00 due as of February 19, 2014;

(5)     In Case Number S1146499, Hunter was cited on January 21, 2010 for "SPEEDING" and "DRIVING VEH WITH SUSPENDED LIC," leading to a warrant of attachment, contempt fees, two missed arraignments for contempt, and a balance of $450.00 due as of February 19, 2014;

---

[5] Rec. Doc. 6.

(6) In Case Number S1117084, dated March 31, 2009, Hunter was cited for "ILLEGAL CARRYING OF WEAPONS," leading to a warrant of attachment and contempt fees, two missed arraignments for contempt, and a balance of $450.00 due as of February 19, 2014;

(7) In Case Number 1190685, Hunter was assessed contempt fees, missed one arraignment for contempt, and has a balance of $300.00 due as of February 19, 2014.[6]

Hunter asserts that "[t]he state court has failed to recognize [his] nationality and status as a Moor and [his] protections under the Treaty of Peace and Friendship of Morocco and the United States which is a violation of birthright and Executive Order 13107."[7] He contends that he "challenged the state court's jurisdiction on the record," but that the state court "never addressed this specific issue," notwithstanding that "[t]he Moors . . . do not fall under the newly created state statutes but [t]he U.S. Constitution."[8]

Hunter argues that although he has "a nationality and a national name reflecting [his] nationality," the Second Parish Court "continues referring to [him] by different credentials even after being corrected," in violation of his human rights and the "special protections provided by but not limited to Executive Order 13107[.]"[9] He asserts that the Second Parish Court has "failed to prove any governmental authority and is therefore surrendering juris."[10] Finally, he argues that he "has not violated any laws under [t]he Constitution of the United States of America, and is therefore

---

[6] Rec. Doc. 6 pp. 25–50. Hunter did not include documents establishing the nature of the charges in Case Number 1190685. The State contends that these proceedings arose from a citation for "expired license plate" and "suspended license," for which Hunter was arraigned on October 30, 2013. Rec. Doc. 9–1 at p. 3.

[7] Rec. Doc. 1 at pp. 1–2.

[8] *Id.* at p. 2.

[9] *Id.*

[10] *Id.*

3

being sued by the state."[11]

Hunter's removal filings include documents apparently filed with the Second Parish Court for the Parish of Jefferson that: (1) reject the appointment of counsel,[12] (2) seek correction of his name to "Khara Amun Bey";[13] (3) demand that "an officer of the court" establish jurisdiction by, among other things, entering into the record a "Delegation of Authority Order" from State of Louisiana; seek documents establishing any criminal charges against him; and urge the court to dismiss the charges against him as unconstitutional;[14] (4) seek a "'Certified Delegation of Authority Order' issued to The United States District Court for the District of Louisiana and confirmed by Congress;"[15] (5) assert that the State is in default for failing to provide him with "all evidence regarding this matter;"[16] (6) object to a psychological evaluation.[17] A second set of documents, filed into the record as a "Notice" on June 20, 2014, contains other correspondence.[18]

---

[11] *Id.*

[12] Rec. Doc. 6 at pp. 4–5.

[13] *Id.* at p. 6.

[14] *Id.* at pp. 8–10.

[15] *Id.* at pp. 14–15.

[16] *Id.* at pp. 12–13.

[17] *Id.* at pp. 22-23.

[18] *See* Rec. Doc. 7. These documents include: (1) A letter notifying the Court of "sanity hearings" pending in the Second Parish Court and of Hunter's objections to representation by appointed counsel; (2) docket entries for Case Number S1082094; (3) an "Affidavit" in which Hunter seeks information about the District Court's public hazard and malpractice bonding; (4) an "Affidavit" purporting to impose fines for violations of Hunter's rights; (5) Hunter's objection to being appointed counsel; (6) Hunter's "Objection to Phycological [sic] Evaluation;" (7) A letter to the Jefferson Parish "Public Defenders Office" stating that Hunter does not consent to appointed counsel, and purporting, among other things, to impose a fine of $75,000 for "each statement that is made on the respondent's behalf;" (8) a letter from a Jefferson Parish Public Defender notifying Hunter that an attachment had been put out for his arrest due to his failure to appear; (9) an objection to a ruling of the Second Parish Court and request for "all jurisdictional documentation and evidence supporting reasons for sanity hearing."

### B.     *Procedural Background*

On April 22, 2014, Hunter filed a "Notice of Removal" in this matter.[19] On September 29, 2014, the State filed a "Motion to Dismiss."[20] Hunter filed an opposition to that motion on October 23, 2014. On November 19, 2014, Hunter filed a "Motion for Writ of Mandamus."

## II. Parties' Arguments

### A.     *The State's Motion to Dismiss*

In support of its "Motion to Dismiss," the State asserts that this Court should "dismiss the action and remand the charges to Second Parish Court," because (1) this Court "does not have subject matter jurisdiction over the state misdemeanor charges filed against [Hunter];" (2) because Hunter's removal was "untimely," and (3) because Hunter's notice of removal lacked the "valid short and plain statement of the grounds for removal as [is] required by 28 U.S.C. [§] 1455(a)."[21]

The State contends that Hunter's asserted basis for federal jurisdiction—that he is a "Moorish American" and that "'newly created state statutes' have no jurisdiction over him because 'the Moors are in Federal jurisdiction'"—"are not legally authorized grounds to confer jurisdiction on this [C]ourt," rendering the notice of removal deficient.[22] The State asserts that Hunter's notice of removal was filed more than 30 days after arraignment in each of the cases he removed, making them untimely and properly subject to a summary order for remand under 28 U.S.C. § 1455(B)(4).[23]

---

[19] Rec. Doc. 1.

[20] Rec. Doc. 9.

[21] Rec. Doc. 9 at pp. 2–3.

[22] Rec. Doc. 9–1 at pp. 1–2.

[23] *Id.* at pp. 2–3.

5

The State avers that although it filed its motion more than 30 days after Hunter filed his notice of removal, the Court may still remand the action because 28 U.S.C. § 1447(c) authorizes this Court to remand the case where, as here, the Court lacks subject matter jurisdiction.[24] The State argues that this Court lacks subject matter jurisdiction over state-law misdemeanors.[25]

## B.   *Hunter's Opposition*

In opposition, Hunter asserts that this Court has subject matter jurisdiction over the removed actions because "this controversy is in fact a case of admiralty and maritime Jurisdiction," and "this case involves the state and peoples of a foreign Territory."[26]

Hunter contends that he was detained and sentenced to 26 days in confinement, and that the court "attempted to mislabel [him] as another, in efforts to conduct a psychological evaluation to determine [his] sanity," all done "against [his] consent and without the state giving any valid proof or reasoning for such actions," even though "this removal had already been filed and was still pending with this Honorable Court and the prosecution had not been remanded."[27] According to Hunter, "[t]his is just one of the many instances where the state court has deprived me of my liberty without due process pursuant to Amendment 5 of the U.S. Constitution."[28]

Hunter argues that "the state court has not given any indictment papers for any of the matters

---

[24] *Id.* at p. 4.

[25] *Id.* at pp. 4–5. The State also cites cases in which parties unsuccessfully asserted that their Moorish-American identity as a basis from relief from state criminal prosecution or punishment, including two cases in which courts held that such arguments did not establish grounds for removal. *Id.* at pp. 6–8.

[26] Rec. Doc. 12 at p. 2.

[27] *Id.*

[28] *Id.*

in controversy," and that "no arraignment has ever taken place," despite the State's presentation of records documenting arraignment.[29] Hunter avers that since he has not been arraigned, his removal was "proper and timely being filed within 30 days of an arraignment," in accordance with the United States Constitution and 28 U.S.C. § 1455.[30]

Referencing the requests he filed for "proof of jurisdiction" in the Second Parish Court, Hunter contends that the state has not yet "prove[n] its own jurisdiction regarding these matters."[31] In any event, Hunter contends, "the allegations and or 'misdemeanors' that the state is asserting can only become valid to issues at law when and if the respondent has knowingly and willingly waived his Constitutional rights."[32] Hunter further argues that "traffic violations are not a crime," and that his rights to travel and to bear arms support federal jurisdiction over his prosecution.[33]

### C.     *Hunter's Motion for Writ of Mandamus*

In support of his "Motion for Writ of Mandamus,"[34] Hunter urges this Court to "order Magistrate Raylyne Beavers to enforce the Default Judgment filed on October 30, 2014 as the Writ of Discovery Submitted was not honored."[35] Hunter asserts that he received an "invitation dated July

---

[29] *Id.*

[30] *Id.* at pp. 2–3.

[31] *Id.* at p. 3.

[32] *Id.*

[33] *Id.* at p. 4.

[34] Rec. Doc. 13.

[35] *Id.* at p. 2.

7

27, 2014" from the Second Parish Court regarding "claims made by them."[36] On September 30, 2014, Hunter asserts, he submitted a "Writ in the Nature of Discovery," in which he "request[ed] certified and verified official copies of jurisdictional related documents prior to September 13, 2014 to make a physical inspection and verify and Witness the same."[37] On September 9, 2014, Hunter asserts, Magistrate Beavers advised him that discovery requests "do not have to be honored" in the Second Parish Court.[38] Hunter contends that he "stated for the record" that "a contract has to be disclosed," since a contract "is the premise for this claim and without there can be no claims," because "[a]ll [l]aw is [c]ontract." Hunter asserts that he subsequently filed a "Notice of Default Judgment," since the request he made in the "Writ in the Nature of Discovery" was not honored.[39]

Hunter contends that Magistrate Beavers and the Second Parish Court, as administrative bodies, "do[] not have jurisdiction to listen to, hear arguments, presentation, or rational [sic]."[40] Hunter further argues that Beavers' "refusal to honor the Writ in the Nature of Discover [sic] and Notice of Default Judgment is a violation of her oath of office."[41] Hunter asserts that Beavers "knowingly committed fraud" by "administering in a capacity in which she does not have jurisdiction, delegation of authority, or judicial powers delegated from the legislature."[42]

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.* at p. 3.

[42] *Id.*

Consequently, Hunter urges the Court to "issue a Writ of Mandamus compelling Raylyn Beavers, to honor the default judgment."[43]

### III. Law and Analysis

The State asserts that the present action should be remanded because: (1) this Court lacks subject matter jurisdiction over the removed charges; (2) Hunter failed to state the grounds for removal; and (3) Hunter's notice of removal is untimely. In opposition, Hunter argues that: (1) this Court has subject matter jurisdiction because the instant action is in admiralty, involves a foreign party, and presents constitutional questions; (2) asserts that he has stated cognizable grounds for removal; and (3) denies that he was ever arraigned which, he asserts, makes his removal timely.

The Fifth Circuit has repeatedly emphasized that removal is an issue of statutory construction, and that the removal statutes are to be strictly construed against removal.[44] Therefore, the Court turns to the Federal Removal statutes, 28 U.S.C. §§ 1441–1455, to determine whether it must remand the present action.

*A.     Removal Statutes*

Pursuant to 28 U.S.C. § 1455, cited by Hunter and the State, the following procedures govern the removal of state criminal actions to federal court:

**(a)     Notice of removal.**--A defendant or defendants desiring to remove any

---

[43] *Id.*

[44] *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994) ("[R]emoval is an issue of statutory construction . . . [and] Removal statutes are to be strictly construed against removal.") (citations omitted); *Bosky v. Kroger Texas, LP*, 388 F.3d 208, 211 (noting "our long-standing canon of statutory interpretation that 'removal statutes are to be construed strictly against removal and for remand'") (citations omitted); *Garrett v. Commonwealth Mortg. Corp. of Am.*, 938 F.2d 591, 593 (5th Cir. 1991) ("Removal is an issue of statutory construction[.]") (citations omitted); In re *Hot–Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) ("As 'the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns ....' The removal statute is therefore to be strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.") (citations omitted).

criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such prosecution is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

**(b)** **Requirements**.

 (1) A notice of removal of a criminal prosecution shall be filed not later than 30 days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time.

 (2) A notice of removal of a criminal prosecution shall include all grounds for such removal. A failure to state grounds that exist at the time of the filing of the notice shall constitute a waiver of such grounds, and a second notice may be filed only on grounds not existing at the time of the original notice. For good cause shown, the United States district court may grant relief from the limitations of this paragraph.

 (3) The filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded.

 (4) The United States district court in which such notice is filed shall examine the notice promptly. If it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted, the court shall make an order for summary remand.

 (5) If the United States district court does not order the summary remand of such prosecution, it shall order an evidentiary hearing to be held promptly and, after such hearing, shall make such disposition of the prosecution as justice shall require. If the United States district court determines that removal shall be permitted, it shall so notify the State court in which prosecution is pending, which shall proceed no further.

**(c)** **Writ of habeas corpus.**--If the defendant or defendants are in actual custody on process issued by the State court, the district court shall issue its writ of habeas corpus, and the marshal shall thereupon take such defendant or

>   defendants into the marshal's custody and deliver a copy of the writ to the clerk of such State court.

Although 28 U.S.C. § 1455 was enacted in December 2011, and has not yet been construed by the Fifth Circuit or by any federal district court in Louisiana, other courts have concluded that the statute is purely procedural, and provides no substantive requirements for removal.[45] A plain-language reading of the statute supports this conclusion: the statute requires that the removing party include in its notice of removal "all grounds for . . . removal," but does not define what constitutes "grounds for removal." Therefore, the Court turns to the other removal statutes to identify the relevant grounds for removal.

The Federal Removal Statutes, as codified at 28 U.S.C. §§ 1441–1455, specify that a state criminal prosecution may be removed to federal court in the following circumstances: (1) when it is against the United States, a federal officer, an officer of the courts of the United States, or an officer of either House of Congress, if certain requirements are met;[46] (2) when it is against a property holder whose title is derived from any officer of the United States or its agencies, and the prosecution affects the validity of any law of the United States;[47] and (3) when it involves a member

---

[45] *See, e.g. Noble v. Wayne Co. Prosecutor's Office*, No. 14-11033, 2014 WL 1515788 at *1 (E.D. Mich. Apr. 18, 2014) ("Even if Petitioner had complied with the requirements set forth in § 1455, that statute provides only a procedural mechanism for removing a criminal case from state court and remanding the case back to state court; it does not provide any substantive grounds for removing criminal cases to federal court."); *Oregon v. Ryan*, No.14-1, 2014 WL 412459 at *1 (D. Or. Feb. 2, 2014) (holding that 28 U.S.C. § 1455 "provides only a procedural mechanism for a district court to follow in either removing a criminal case or remanding it and does not identify any substantive grounds germane to removal"); *City of North Las Vegas v. Davis,* No. 13-156, 2013 WL 2394930 at 2 (D. Nev. May 30, 2012) ("28 U.S.C. § 1455 merely describes the procedural mechanism for removing criminal cases. It does not provide substantive grounds for removing criminal cases.").

[46] *See* 28 U.S.C. § 1442(a)(1), (3), and (4).

[47] *See* 28 U.S.C. § 1442(a)(2).

of the armed forces, if certain requirements are met.[48] Additionally, pursuant to 28 U.S.C. § 1443:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
>
> (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

In cases that do not involve federal officers, federally derived property, or members of the armed forces, other courts—including the two United States Courts of Appeals that have construed 28 U.S.C. § 1455—have concluded that 28 U.S.C. § 1443 defines the grounds for removal of state criminal cases to federal court.[49] Hunter's notice of removal contains no allegations that he is an officer of the United States, a member of the armed forces, or the holder of title in property derived from an officer of the United States. Rather, he asserts that the state court has failed to recognize his "status and nationality as a moor," and his "protections under the Treaty of Peace and Friendship Between Morocco and the United States," violating his "birthright," and his "human rights."[50] Therefore, in order to establish the "grounds for removal" required by 28 U.S.C. § 1455, Hunter's

---

[48] *See* 28 U.S.C. § 1442(a).

[49] *See St. Louis Co. v. Thomas*, 549 Fed. App'x 596 (8th Cir. 2014) ("We hold that the district court properly remanded the case because the notice of removal did not comply with the procedural requirements of 28 U.S.C. § 1455, and did not meet the requirements for removal under 28 U.S.C. § 1443(1)"); *Pennsylvania v. Randolph*, 464 Fed. App'x 46 (3d Cir. 2012) (noting that, apart from 28 U.S.C. § 1443, "we are not aware of any other provision permitting removal of the State's criminal prosecution against Randolph."); *Texas v. Kearns*, No. 14-27, 2014 WL 258786 (W.D. Tex. Jan. 23, 2014) (noting that "the federal removal statute governing the removal of criminal prosecutions from state court provides two avenues for removal," both of which are contained in 28 U.S.C. § 1443).

[50] Rec. Doc. 1 at p. 2.

12

notice of removal must meet the requirements set forth in 28 U.S.C. § 1443.

The Supreme Court, construing 28 U.S.C. § 1443, has held that § 1443(2) "is available only to federal officers and to persons assisting such officers in the performance of their duties."[51] No such limitation is established by § 1443(1); rather, the Supreme Court, in *Johnson v. Mississippi*, held that:

> [A] removal petition under 28 U.S.C. § 1443(1) must satisfy a two-pronged test.
>
> First, it must appear that the right allegedly denied the removal petitioner arises under a federal law providing for specific civil rights stated in terms of racial equality. Claims that prosecution and conviction will violate rights under constitutional or statutory provisions of general applicability or under statutes not protecting against racial discrimination, will not suffice. That a removal petitioner will be denied due process of law because the criminal law under which he is being prosecuted is allegedly vague or that the prosecution is assertedly a sham, corrupt, or without evidentiary basis does not, standing alone, satisfy the requirements of § 1443(1).
>
> Second, it must appear, in accordance with the provisions of § 1443(1), that the removal petitioner is denied or cannot enforce the specified federal rights 'in the courts of (the) State. This provision normally requires that the denial be manifest in a formal expression of state law, such as a state legislative or constitutional provision, rather than a denial first made manifest in the trial of the case. Except in the unusual case where an equivalent basis could be shown for an equally firm prediction that the defendant would be denied or cannot enforce the specified federal rights in the state court, it was to be expected that the protection of federal constitutional or statutory rights could be effected in the pending state proceedings, civil or criminal.[52]

The Fifth Circuit, applying *Johnson*, instructs as follows:

> Under 28 U.S.C. § 1443, a "defendant" may remove a civil action or criminal prosecution from state to federal court if he is denied or cannot enforce in the courts

---

[51] *City of Greenwood v. Peacock*, 384 U.S. 808, 815 (1966). *See also Charter Sch. of Pine Grove, Inc. v. St. Helena Parish Sch. Bd.*, 417 F.3d 444, 447 (5th Cir. 2005) ("The Supreme Court has held that § 1443 'confers a privilege of removal only upon federal officers or agents and those authorized to act with or for them in affirmatively executing duties under any federal law providing for equal civil rights.'").

[52] *Johnson v. Miss.*, 421 U.S. 213, 219–20 (1975) (citations and internal quotation marks omitted).

of such State a right under any law providing for the equal civil rights of citizens of the United States. This provision has consistently been construed narrowly to require strict satisfaction of both the "civil rights" element and the "enforcement" element intrinsic within it. The two-prong test has been stated as follows:

First, it must appear that the right allegedly denied the removal petitioner arises under a federal law providing for specific civil rights stated in terms of racial equality. Second, it must appear, in accordance with the provisions of § 1443(1), that the removal petitioner is denied or cannot enforce the specific federal rights in the courts of the State.[53]

*B. Analysis*

### 1. Subject Matter Jurisdiction

Applying these rules to the present case, Hunter, who has not alleged that he is a federal officer, may not seek removal under § 1443(2). Therefore the Court will consider whether both the "civil rights" and "enforcement" elements of § 1443(1) have been strictly satisfied here. Hunter's notice of removal makes four assertions in support of removal: First, that the Second Parish Court has "failed to recognize [his] nationality and status as a Moor, and [his] protections" under a treaty between Morocco and the United States, violating his "birthright and Executive Order 13107."[54] Second, that "the Moors are in federal jurisdiction and do not fall under the newly created state statues but the U.S. Constitution."[55] Third, that the Second Parish Court refers to him by an incorrect name.[56] Fourth, that the Second Parish Court "failed to prove any governmental authority."[57]

---

[53] *Smith v. Winter*, 717 F.2d 191, 194 (5th Cir. 1983).

[54] Rec. Doc. 1 at pp. 1–2.

[55] *Id.* at p. 2.

[56] *Id.*

[57] *Id.*

14

Even construing Hunter's notice of removal liberally, as is required when construing *pro se* pleadings,[58] the Court cannot conclude that Hunter has established grounds for removal under § 1443(1). Hunter's vague invocations of his "birthright" and an international treaty do not satisfy the requirement that he point to "federal law providing for specific civil rights stated in terms of racial equality,"[59] and neither does his citation of Executive Order 13107, which appears to define some of the responsibilities of the United States Executive Branch in implementing human rights treaties.[60] Even assuming that Hunter has satisfied the "civil rights" prong of § 1443(1), his notice of removal has not satisfied the "enforcement" prong of § 1443(1), since he has pointed to no denial of civil rights or bar to enforcement of those civil rights that is "manifest in a formal expression of state law, such as a state legislative or constitutional provision, rather than a denial first made manifest in the trial of the case."[61] His contention that the Second Parish Court refers to him by an incorrect name is unsupported, and his argument that the Second Parish Court does not have, or has not proven, jurisdiction over him, is similarly unsupported.[62]

---

[58] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[59] *City of Greenwood*, 384 U.S. at 815.

[60] *See* 63 FR 68991 (Dec. 10, 1998).

[61] *City of Greenwood*, 384 U.S. at 815.

[62] The State notes that other courts have addressed similar arguments in support of removal, and found them insufficient to establish a proper basis for federal jurisdiction over their criminal prosecutions. *See, e.g. Bey v. Pennsylvania*, 345 Fed. App'x 731 (3rd Cir. 2009) (concluding, where removing defendant invoked the same treaty Hunter does and asserted that his "status as a sovereign prevents this court from being able to establish jurisdiction over me," that the defendant "has not shown why he cannot be prosecuted in state court or otherwise demonstrated an independent basis for removing his matter to federal court."); *South Carolina v. Ali*, No. 12-2629, 2012 WL 6765732 at *1 (D. S.C. Dec. 4, 2012) ("[T]he defendant's purported ground for removal based on the premise that he should not be prosecuted for a violation of the law of South Carolina because he is an Aboriginal Indigenous Moorish–American is frivolous on its face."). Hunter's arguments here appear to be slightly different from those asserted in the State's cited cases, but are equally meritless.

Since Hunter has failed to satisfy the requirements of § 1443, and cannot satisfy the requirements of any other federal removal statute, he has failed to establish that this Court has subject matter jurisdiction over the prosecutions he removed.

### 2. Grounds for Removal

The State contends that Hunter has failed to include a short and plain statement of the grounds for removal, rendering his notice of removal insufficient under § 1455(a). In his Notice of Removal, Hunter cites § 1455 and argues that removal is appropriate, but, as just discussed, Hunter's arguments are without merit, and therefore do not state the requisite grounds for removal, whether in a short and plan manner or otherwise.

### 3. Timeliness of Removal

The State also contends that Hunter removed the prosecutions more than 30 days after his arraignment, making removal untimely, although Hunter maintains that he was never arraigned. Under § 1455(b)(4), "a notice of removal of a criminal prosecution shall be filed not later than 30 days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time." In permitting Courts to enter an order granting leave to file a notice of removal more than 30 days after arraignment upon good cause shown, § 1455(b)(4) establishes that district courts are not categorically barred from allowing defendants to remove actions more than 30 days after arraignment. Regardless, because Hunter has failed to establish grounds for removal, the Court need not reach the disputed issue of whether Hunter was ever arraigned, much less whether Hunter must show good cause to remove, as he would be required to do if he had removed this action more than 30 days after arraignment.

### 4. Summary Remand Pursuant to § 1455(b)(4)

Pursuant to § 1455(b)(4), "if it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted, the court shall make an order for summary remand." Summary remand is appropriate here, since, on the face of the notice of removal and its attachments, it is clear to the Court that removal should not be permitted.[63]

### IV. Conclusion

Hunter has failed to state a cognizable basis for removal of his criminal prosecution. Therefore, the Court lacks jurisdiction and will remand his action. Considering that the Court lacks jurisdiction over this matter, Hunter's motion for a writ of mandamus is dismissed. Accordingly,

**IT IS ORDERED** that the above-captioned matter is remanded to state court.

**IT IS FURTHER ORDERED** that Hunter's "Motion for Writ of Mandamus"[64] is **DISMISSED.**

**NEW ORLEANS, LOUISIANA**, this __15th__ day of December, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[63] 28 U.S.C. § 1447(c) states that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

[64] Rec. Doc. 13.